Our next case for this morning is United States v. Hayden. Mr. Welby. May it please the court, counsel. My name is Steve Welby. I represent Alfonso Hayden. Mr. Hayden pled guilty to possession with the intent to distribute less than 50 pounds of marijuana and had a criminal history score of a total offense level of 15 and criminal history category 3. He was facing a punishment range of 24 to 30 months and two years of supervised release. The judge gave him an upward departure of 46 months and gave him 10 years of supervised release. We're asking the court to review the sentence both for substantive reasonableness and procedural reasonableness. The key question that sticks out in my mind in reviewing the sentencing transcript is the judge based his decision on the finding that this case was more akin to a level 19 criminal history category 3 but never explains why he gets there. If we look at the Gall case, the Gall case requires that the court adequately explain the sentence and to ensure that the justification is sufficiently compelling to support the degree of the variance. Here we have a very large variance with respect to the guideline itself and we have five times more supervision added in the case. The judge gives a couple reasons. One first is that the case involved marijuana. He considered marijuana to be a very serious crime. I think if we look at the amount of marijuana that was seized in this case, there are two one pound bags. There was a lot of money that was converted into marijuana but all that was taken into account in reaching the offense level of 15. I don't know of any case in which it's been viewed as necessary for a significant upward and committed money laundering by changing $20 bills into $100 bills. But it's all being done while he's under supervision on a prior drug conviction, right? Not all of it, your honor, but part of it was. I think his supervision, he agreed to engage in these acts from January to June of 2010. I think his supervision. That seems to make a difference. It certainly seemed to make a difference to Judge Reagan. That's the second point, your honor. The second point the judge focused on was the fact that the defendant was on supervision during part of this time and he gave him two additional points on his criminal history score. He added all of the marijuana into the offense conduct score and that's why you get to the level 15 criminal history category 3. But then he went above and beyond that and said, I think this case is akin to a 19.  Well he says Hayden hasn't been deterred yet from drug crimes and so maybe something more is necessary. And that's what I got out of the transcript. I think that was the primary focus of the upward departure. I know he mentions the seriousness of the crime. That's a valid consideration, isn't it? Specific deterrence. I can't believe there's any general deterrence in these sentences given the drug business, but specific deterrence? I think so. And I think the criminal history is the area where the judge had the greatest concern and it's the area that he discussed in most detail. And he said that he was concerned about the risk of recidivism and that he felt that the two point additional time wasn't enough, although that's what the guidelines called for. And instead of focusing on how would these guidelines treat this if his criminal history had actually been worse, he said, well we're just going to pick offense level 19. Well, he's kind of giving an idea where he wants to go. Actually, what seems to be happening is we have cases like Kimbroke or whatever, cases where district judges are told you can have a different sentencing philosophy in the direction of being more lenient in drug cases, but Judge Reagan seems to have a sentencing philosophy that's more strict than what a lot of the current literature and the Attorney General's and the Sentencing Guidelines, the Sentencing Commission's recent work would suggest, not to mention the legalization wholly or partially of marijuana around the country, but Judge Reagan thinks it's still a significant offense. He thinks four years for whatever it was, something that order, is an appropriate sentence for this much trafficking. Well, I just don't think there's enough in the record to say that this case involved so much trafficking. He would have been, just based on the evidence that he was caught at the time of the seizure, in the scope of that time frame, he would have been at a level 8, and then we end up at a level 19 by adding all of the irrelevant conduct. But he hadn't been deterred, he did it while he was on supervised release. And I agree that that is a legitimate concern, and the guidelines provide if you break the law while you're on supervised release, you get a, there's a punishment for that. In his case, it actually caused an incremental punishment because the addition of two points kicked him from a Category 2 into a Category 3. And had Judge Reagan said, I'm going to look, we have a guideline that specifically addresses that concern, the understated criminal history and the risk of recidivism are addressed in 4A1.3. Had he done that and said, you know what, I think based on this individual and what he's done in the past and what he did in this case, I think his criminal history is understated, he could have gone to that guideline, given us notice that he intended to do a traditional departure under the guidelines. But he doesn't have to do that. Irizarry says he doesn't have to give you that kind of notice. For a variance. For a variance, which is what he did, and I really... But with Booker, isn't it really just, is this a guideline sentence or is it not a guideline sentence? And you have to be prepared at any time for it not to be a guideline sentence in the current world. Of course, you have to be prepared. I agree with that. But in this case, it's particularly unique and I think it struck myself and the defendant both as being somewhat unfair in that we had three different sentencing hearings. And during the first two, the judge never said a word about considering an upward departure. The government filed a lengthy sentencing memo and did not ask for an upward departure. And then after we argued all of the mitigation, the judge granted elocution, the government had its chance to make its argument, then the judge gives an upward departure. And the first time that's mentioned in a month is right before the sentencing is over. So to me, that's why we raised the procedural argument. And I recognize the Supreme Court precedent in this case. Well, the term, even the term for supervised release hadn't been revoked, had it? Where was it? Where was that? There was a, he was arrested with a large amount of money and he was given 120 days and a halfway house by the court in Illinois. State court? No, your honor. Federal court in California. Well, that was my point. Well, I was curious where the court was located. California, did it? Yeah. He was, he's from Oakland, California. That's my point. It's where state and where it's now legal to, you get a little different approach. And they apparently didn't treat it the same way that Reagan would have and then all. Well, and I can't speculate if that, if the fact that he wasn't treated more harshly by the California court. I would speculate. I think the same thing. I think the judge said, you know, he should have been whacked before, so now I'm going to whack him. But I don't think that's the proper rule for the court in this case. The rule that we have established in the sentencing guidelines is if you commit the crime while you're on supervised release, the consequence is two additional points. And if that's not enough, there is a guideline that says you can consider this. To move him, to get to the same levels of 19, he would have had to gone from a Category 2 all the way to a Category 5. So we would have treated a guy with three criminal history points the same as a guy with 12 criminal history points. And I would have argued that that would have been too much to get to 46, to get to 46 months. So my, my point on the appeal is that there is a mechanism in place under which the judge could have evaluated the risk of recidivism and the understated criminal history. And instead of doing that, he simply arbitrarily added points to the sentence and gave the defendant a sentence which, in the end, is more than necessary to punish him for this offense. And I'll, with the court's permission, I'll save you time. You can save the rest of your time for rebuttal. That would be fine. Thank you. Thank you. Mr. Drucker. Thank you. Good morning. Good morning. Thank you. May it please the court, my name is Jonathan Drucker. I'm a Special Assistant United States Attorney with the Southern District of Illinois representing the government today. I think Judge Reagan did pretty much exactly what Mr. Welby wanted here in this case. Well, but the government itself was only arguing for 30 months, you know, and, and we've, even the Supreme Court has reminded us that people are not indifferent to the difference between 30 months and 46 months. Every additional day in prison matters, so having 46 months pop in out of the blue, maybe that was fine with the government, but it's not what you'd ask for. No, it's not what the government requested, but the judge also is inbound by that. Oh, of course, we know that perfectly well, but, but why, why that? You know, why is 19 the right level? Why is, you know, what's, what's the judge doing other than just throwing darts? Well, I think he did pretty thoroughly explain his reasoning for why an above guideline sentence is appropriate in this case. But what does that mean? 30, 32, 35, 46, 100? Sure. I mean, what, what is that proper number if it's, if you are going above? You know, I think the judge considered, first of all, the fact that he was not revoked on his supervised release and could have been. In that case, on just the revocation, the guidelines would have called for 30 to 37 months, and that's in addition to any time he would have received on the instant case. And I think that was a consideration that the judge used, essentially that he had received a break in the past because there was no revocation. And I think that's entirely appropriate. I think judges look at the record all the time to see, well, this, this just points out a problem that we're going to continue to have as states, if they do continue to legalize marijuana, and then you have other states, which it may not now, who knows what Illinois is, it's going to be a continuing problem. Right. This dichotomy of illegal in one place and not illegal in another place. Right. And in this case, I think the defendant was exploiting that weakness in that he was sort of fraudulently using his medical marijuana card in California. Well, yeah. This was different. This was different. Yeah. What are the circumstances of that? Did he have no medical condition? Did he overstate his medical condition? What was that about? My understanding is that it was fraudulent in that he was using the same card at multiple places, exceeding sort of what was the normal amount. Smurfing. Smurfing. Exactly. That's my understanding. So, I think Judge Regan was taking the possible replication into account. But it's so frustrating to have to read people's minds. I mean, this is similar to what we were discussing in the last case. If Judge Regan had been you and had stood there and said, you know, I'm very troubled that this happened while still on supervised release, and here's what the sentence would be, what should be the cumulative penalty for these things, maybe that begins to get you to the right level of specific deterrence or one of the other factors that 3553A talks about. I don't know why courts of appeals bother to review any of these things if we're just going to rubber stamp whatever the district judges do, no matter how much they say or don't say. Well, certainly I don't think anyone thinks this court just merely rubber stamps district court. Back to the days of 1980. Exactly. I mean, it would save us a lot of work, I can tell you that. But I think the two main reasons that the judge cited for this was, one, the potential on a replication, and two, just the likelihood of recidivism. I think the judge was very concerned that this defendant had already served a lengthy term of imprisonment for narcotics trafficking. That did not deter him from returning back to the same lifestyle. While in prison, there's also problems with narcotics. He's trying to smuggle heroin into the prison by swallowing balloons filled with heroin. And subsequently, while on supervised release, he still has problems testing positive for marijuana and other offenses. But, you know, interesting that you mention the heroin, because the other thing that's going on here that's rumbling around in the background is the cocaine, which he contests, which he keeps out of his stipulated facts. And it gives me the impression, suppose the judge had said, you know, I realize that there were cocaine allegations at first, and I'm entitled to find things in sentencing by a preponderance. And I'm finding by a preponderance that you weren't really just in the marijuana business, you were also in the cocaine business. At that point, a 46-month sentence would begin to sound pretty reasonable. But the judge doesn't say any of those things either. So we don't know if that's what he's thinking. Well, the judge actually finds the opposite. The judge finds that he could not find by a preponderance. Right. I'm not going to do cocaine, he says. Exactly. So that's... But is he consistent? Does he follow through on that? I believe so, Your Honor. I don't think that this above-guideline sentence is in any way to, you know, punish based on the cocaine usage. I think specifically in the third day of the sentencing, it's very, very different. We are just talking about the marijuana. We're not talking about the cocaine. And again, the judge gives very thorough reasons as to why that above-guideline sentence is appropriate in this case. And I think the lengthy term of supervision also speaks to that. The judge is very concerned that this defendant is going to recidivate, and so wants a longer period of time to monitor this defendant. Okay. Thank you. All right. Thank you very much. Anything further, Mr. Welding? Just briefly, Your Honor. To answer the court's question as to the connection between the marijuana card and smurfing or any other of those allegations, I don't think there's anything in the record that would make that connection. He did have a medical marijuana card from the state of California, and he did buy marijuana in California and ship it here, whether that was through the use of the card or anything else. There's nothing to suggest yes or no on that. The record is simply silent. So there were no facts in the record about that? No, Your Honor. Nothing, either in the PSR or in the stipulated facts. How much is he authorized by the prescription to get? I'm sorry. I don't know, Your Honor. But I don't think he could buy 15 kilos. We can assume he overshot the mark, I think. Yeah, I don't have any reason to think that there was an allegation of fraud with respect to the card. I think if you just look at it old-fashioned, buying marijuana in one place and selling it someplace else, I think that's... Probably worth more. Arbitrage. Might be worth more in Illinois than it is in California. I think that'd be a fair guess, Your Honor. But to answer the more central point, all of the questions that were raised by the court get right back to the instruction that the court in Gall gives us. If you're going to give a significant upward departure, you have to provide an explanation on the record as to why you think that's true. And if you're worried about recidivism and you say, you know what, I'm going to give you an extra eight years of supervision because I'm afraid you're going to go out and break the law because that's what you did last time, then I think that makes sense. But to do that and give an upward departure and not explain why, it just seems to me that was inappropriate and we're asking the court to remand the case for resentencing so that these issues could be more fully developed. All right. Thank you very much. Thank you. And were you appointed, Mr. Welby? Yes, Your Honor. So we thank you very much for accepting the appointment, for helping the court, for helping your client. You're welcome. And thanks as well to the government. We will take the case under advisement.